J6sWwadP

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4            v.                          19 Cr. 233 (LAK)(GWG)

5  MUSTAFA ABDEL-WADOOD,

6            Defendant.
                                        Plea
7  ------------------------------x

8                                       New York, N.Y.
                                        June 28, 2019
9                                       11:00 a.m.

10  Before:

11
                    HON. GABRIEL W. GORENSTEIN,
12
                                        U.S. Magistrate Judge
13
                         APPEARANCES
14
   GEOFFREY S. BERMAN
15       United States Attorney for the
         Southern District of New York
16  BY:  BRENDAN F. QUIGLEY
         ANDREW M. THOMAS
17       Assistant United States Attorneys

18  BRACEWELL LLP
         Attorneys for Defendant
19  BY:  PAUL L. SHECHTMAN
         MARGARET E. LYNAUGH
20

21  Also Present:  Special Agent Nick Kroll, FBI

22

23

24

25

J6sWwadP

| | |
|---|---|
| 1 | (Case called) |
| 2 | MR. QUIGLEY:  Good morning, your Honor.  Brendan |
| 3 | Quigley and Andrew Thomas, for the United States.  We're joined |
| 4 | by Special Agent Nick Kroll of the FBI. |
| 5 | MR. SHECHTMAN:  Your Honor, Paul Shechtman and Maggie |
| 6 | Lynaugh from the Bracewell firm, and the defendant is present. |
| 7 | THE COURT:  OK.  I have before me, sir, a form.  What |
| 8 | this says is that you understand you have the right to have |
| 9 | this plea taken by a United States district judge, and you're |
| 10 | agreeing to have it taken by a United States magistrate judge. |
| 11 | Is that correct? |
| 12 | THE DEFENDANT:  Yes, your Honor. |
| 13 | THE COURT:  All right.  I'm going to ask the clerk to |
| 14 | swear you in. |
| 15 | THE DEPUTY CLERK:  Would you stand and raise your |
| 16 | right hand.  You are Abdel Wadood? |
| 17 | THE DEFENDANT:  Yes, I am. |
| 18 | (Defendant sworn) |
| 19 | THE COURT:  Thank you. |
| 20 | All right.  Sir, do you understand that now that |
| 21 | you're under oath, any statements you make here could be used |
| 22 | against you in a prosecution for perjury or for making false |
| 23 | statements? |
| 24 | MR. SHECHTMAN:  Judge, do you want Mr. Abdel-Wadood to |
| 25 | stand or sit during the allocution? |

J6sWwadP

| | |
|---|---|
| 1 | THE COURT:  He can sit.  That's fine. |
| 2 | Sir, did you hear my question? |
| 3 | THE DEFENDANT:  I do. |
| 4 | THE COURT:  Tell me your full name. |
| 5 | THE DEFENDANT:  Mustafa Abdel-Wadood. |
| 6 | THE COURT:  What is your age? |
| 7 | THE DEFENDANT:  49. |
| 8 | THE COURT:  Are you a citizen of the United States? |
| 9 | THE DEFENDANT:  I am not. |
| 10 | THE COURT:  What country are you a citizen of? |
| 11 | THE DEFENDANT:  I'm a citizen of Egypt and a citizen |
| 12 | of Malta. |
| 13 | THE COURT:  Are you able to read and write in English? |
| 14 | THE DEFENDANT:  I am, sir. |
| 15 | THE COURT:  What is the extent of your formal |
| 16 | education? |
| 17 | THE DEFENDANT:  I have a graduate degree and an MBA. |
| 18 | THE COURT:  Are you now or have you recently been |
| 19 | under the continuing care of a psychiatrist or doctor for any |
| 20 | reason? |
| 21 | THE DEFENDANT:  I have had a therapist for a couple of |
| 22 | years, sir. |
| 23 | THE COURT:  All right.  An psychological therapist? |
| 24 | THE DEFENDANT:  Yes, your Honor. |
| 25 | THE COURT:  Does the condition for which you're being |

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J6sWwadP

1    treated have any impact on your ability to see, hear, think or

2    reason, understand or make decisions or judgments?

3                THE DEFENDANT:  No, your Honor.

4                THE COURT:  Have you ever been hospitalized in the

5    past for mental illness?

6                THE DEFENDANT:  No.

7                THE COURT:  For alcoholism.

8                THE DEFENDANT:  No.

9                THE COURT:  For narcotics addiction.

10               THE DEFENDANT:  No.

11               THE COURT:  As you sit here today, are you under the

12    influence of any drug or alcoholic drink?

13               THE DEFENDANT:  No.

14               THE COURT:  Have you been able to understand

15    everything that has been said to you?

16               THE DEFENDANT:  Yes, sir.

17               THE COURT:  Have you seen a copy of the indictment in

18    this case?

19               THE DEFENDANT:  Yes, sir.

20               THE COURT:  Have you read it?

21               THE DEFENDANT:  Yes, sir.

22               THE COURT:  Do you understand what it says you did?

23               THE DEFENDANT:  Yes, sir.

24               THE COURT:  Have you had a chance to discuss the

25    charges and how you wish to plead with your attorney?

J6sWwadP

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Are you satisfied with your attorney's

3   representation of you?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Have you had a full opportunity to discuss

6   this case with him?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Are you ready to enter a plea?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  All right.  Count One charges that from

11  2014 to 2018, you conspired with others to violate the

12  racketeering laws of the United States through the conduct of

13  the affairs of something called Abraaj enterprise.

14          Do you understand this charge, sir?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  How do you wish to plead; guilty or not

17  guilty?

18          THE DEFENDANT:  Guilty.

19          THE COURT:  All right.  Sir, Count Two charges you

20  with conspiracy to commit securities fraud.  It's alleged this

21  occurred between 2014 and April 2018.

22          Do you understand this charge, sir?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  How do you wish to plead; guilty or not

25  guilty?

J6sWwadP

| | |
|---|---|
| 1 | THE DEFENDANT:  Guilty. |
| 2 | THE COURT:  All right.  Counts Three, Four and Five |
| 3 | each charge you with counts of securities fraud. |
| 4 | MR. QUIGLEY:  Your Honor, the defendant's not charged |
| 5 | in Count Four. |
| 6 | THE COURT:  I'm sorry. |
| 7 | MR. QUIGLEY:  If it's easier, I can hand up the |
| 8 | cooperation agreement, which summarizes -- |
| 9 | THE COURT:  I apologize. |
| 10 | Counts Three and Five charge you with securities |
| 11 | fraud.  Count Three involves an investment called APEF IV; |
| 12 | Count Five is called APEF VI.  Count Four involves, again, the |
| 13 | time period 2014 to May 2018, same time period for Count Five. |
| 14 | Do you understand these charges, sir? |
| 15 | THE DEFENDANT:  I do, sir.  Yes. |
| 16 | THE COURT:  And how do you wish to plead -- |
| 17 | THE DEFENDANT:  Guilty. |
| 18 | THE COURT:  -- guilty or not guilty? |
| 19 | I couldn't hear you, sir. |
| 20 | THE DEFENDANT:  Guilty, sir. |
| 21 | MR. SHECHTMAN:  Judge, just for clarity, that is just |
| 22 | to Three and Five, not Four. |
| 23 | THE COURT:  Three and Five, that's correct.  I'm going |
| 24 | to go over these again. |
| 25 | MR. SHECHTMAN:  That's all right. |

J6sWwadP

1          THE COURT:  Sir, Count Six charges you with conspiracy

2    to commit wire fraud.  It's, again, alleged this occurred

3    between 2014 and May of 2018.

4          Do you understand this charge, sir?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  How do you wish to plead; guilty or not

7    guilty?

8          THE DEFENDANT:  Guilty.

9          THE COURT:  All right.  Count Seven charges you with a

10   count of wire fraud, this time in the time period April 2014 to

11   May 2018, involving something called APEF IV.

12         Do you understand this charge, sir?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  How do you wish to plead; guilty or not

15   guilty?

16         THE DEFENDANT:  Guilty.

17         THE COURT:  Sir, Count Nine charges you with wire

18   fraud this time in connection with APEF VI in the time period

19   May 2014 to May 2018.

20         Do you understand this charge, sir?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  How do you wish to plead; guilty or not

23   guilty?

24         THE DEFENDANT:  Guilty.

25         THE COURT:  All right.  Let me just go over this, sir.

J6sWwadP

1    Is it correct that you wish to plead guilty to Count One, sir?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  All right.  I want you to understand this

4    carries a maximum sentence of 20 years in prison; a maximum

5    term of supervised release of three years; a maximum fine of

6    $250,000, or twice what was gained because of the offense or

7    twice what was lost to someone other than you because of the

8    offense; also, a $100 special assessment.

9              Do you understand these penalties, sir?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Is it correct that you wish to plead

12   guilty to Count Two?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Sir, this has a maximum sentence of five

15   years' imprisonment and the same terms of supervised release,

16   fine and special assessment as Count One.

17             Do you understand this?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Is it correct you wish to plead guilty to

20   Counts Three and Five?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  All right.  Sir, this has the maximum

23   sentence of imprisonment of 20 years and the same terms of

24   supervised release as the other counts, which is three years;

25   also, a maximum fine of $5 million, or twice what was gained

J6sWwadP

1   because of the offense or twice what was lost to someone other

2   than you because of the offense; and a $100 special assessment.

3           Do you understand this?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  All right.  Sir, Count Six, is it correct

6   that you wish to plead guilty to that count?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  Sir, that has a maximum sentence of 20

9   years' imprisonment.

10          Do you understand this?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Also, the same supervised release term,

13  maximum fine and special assessment as the charge in Count One.

14          Do you understand this, sir?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  The charge in Count Seven, is it correct

17  you wish to plead guilty to that, sir?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And the same for Count Nine, you wish to

20  plead guilty?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Those two counts, once again, have a

23  maximum term of imprisonment of 20 years and the same

24  supervised release term, maximum fine and special assessment as

25  Count One.

J6sWwadP

1              Do you understand those penalties, sir?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  All right.  Sir, if you were to add all

4     the maximum sentences of incarceration if the counts ran

5     consecutively, that's 125 years in prison.

6              Do you understand that?

7              THE DEFENDANT:  I do, sir.  Yes, sir.

8              THE COURT:  Do you understand that restitution can be

9     ordered for any of these offenses?

10             Do you understand that?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Do you understand that if you plead guilty

13    you may be required to give up, or forfeit, to the government

14    any money or property you received from the offenses or that

15    was used to commit the offenses?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Do you understand that if, as part of your

18    sentence, you were placed on a term of supervised release and

19    you were to then violate any of the conditions of that release,

20    you would face an additional term of imprisonment?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  All right.  Sir, do you understand because

23    you're not a citizen of the United States, a guilty plea means

24    you may be removed from the United States and denied admission

25    or citizenship in the future?

J6sWwadP

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you understand you have the right to

3    plead not guilty to these charges and the right to a jury

4    trial, if you wish?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Do you understand if you pled not guilty

7    and went trial, you would be presumed innocent and the burden

8    would be on the government to prove your guilt beyond a

9    reasonable doubt?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Sir, I want you to understand there are a

12    number of other rights that you would have if you pled not

13    guilty and went to trial.

14          If you went to trial, you would be entitled to be

15    represented by an attorney at all stages of the case, and if

16    you could not afford to hire an attorney, the Court would

17    provide one to you for free.

18          At a trial, you would be entitled to confront and

19    cross-examine any witnesses called by the government to testify

20    against you.  You would be entitled to testify on your own

21    behalf.  You could call witnesses and present evidence, and the

22    Court would compel the attendance of witnesses you wished to

23    call at trial.

24          Also, at a trial, you would not you be required to

25    testify against yourself.

J6sWwadP

1              Sir, do you understand the rights I've just mentioned?

2              THE DEFENDANT:  Yes, sir, I do.

3              THE COURT:  Do you understand you give them all up if

4    you plead guilty?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Do you understand if you enter a guilty

7    plea, you are not going to be able to withdraw this plea; there

8    will be no trial and the only remaining step in this will be

9    sentencing?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  Do you understand that even if you are

12    surprised or disappointed by your sentence, you will still be

13    bound by your guilty plea?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  Sir, I have before me a letter, dated June

16    25, from the government to your attorney that contains a plea

17    agreement.  Have you seen this letter?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  Have you read it?

20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  Did you sign it today?

22              THE DEFENDANT:  Yes, sir.

23              THE COURT:  Before you signed it, did you discuss it

24    with your attorney?

25              THE DEFENDANT:  Yes, sir.

J6sWwadP

1          THE COURT:  Did he explain to you all of its terms and
2     conditions?
3          THE DEFENDANT:  Yes, your Honor.
4          THE COURT:  Sir, apart from what's contained in this
5     letter, have any promises been made to you in order to get you
6     to plead guilty?
7          THE DEFENDANT:  No.
8          THE COURT:  Sir, do you understand that, in sentencing
9     you, the sentencing judge will consider as part of the sentence
10    the prison range called for by the part of our law known as the
11    sentencing guidelines?  Has your attorney explained to you the
12    sentencing guidelines?
13         THE DEFENDANT:  Yes, sir.
14         THE COURT:  Do you understand that no matter what the
15    judge believes is called for by the guidelines in terms of the
16    sentencing range, that range is just one of many factors that
17    he will consider in determining your sentence and that he has
18    the discretion to give you a sentence below or above the range,
19    anywhere up to the maximum sentences that I told you about
20    earlier, totaling 125 years?
21         Do you understand that?
22         THE DEFENDANT:  Yes, sir.
23         THE COURT:  I note that the agreement refers to the
24    possibility that the government may advise the sentencing judge
25    by letter that you have given the government substantial

J6sWwadP

1    cooperation, which could lead to a reduction in your potential

2    prison sentence.

3           Do you understand that the plea agreement does not

4    absolutely require the government to do this and that it may

5    freely choose not to provide such a letter based on its

6    assessment of your compliance with the plea agreement and the

7    extent of your cooperation?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  Sir, knowing all this, do you still wish

10   to plead guilty to Counts One, Two, Three, Five, Six, Seven and

11   Nine of the superseding indictment, No. 6?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Have any force or threats been used,

14   either direct or indirect, to influence how you plead today?

15          THE DEFENDANT:  No.

16          THE COURT:  Is your plea voluntary; that is, made of

17   your own free will?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Did you, in fact, commit the offenses that

20   are charged in Counts One, Two, Three, Five, Six, Seven and

21   Nine of the indictment?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  All right.  Before I ask you to tell me

24   what you did, I'm going to ask the government to summarize the

25   elements of the offense and, if they wish, to tell me any

J6sWwadP

1   evidence they would have offered at trial.

2          MR. QUIGLEY:  Yes, your Honor.

3          With respect to Count One, the racketeering

4   conspiracy, the government would need to prove the following

5   three elements:

6          First, that there was an agreement among two or more

7   persons to participate in an enterprise that would affect

8   interstate commerce through a pattern of racketeering activity;

9          Second, that the defendant knowingly and willfully

10  became a member of that agreement; and

11         Third, that the defendant or another member of the

12  conspiracy agreed to commit two racketeering acts.

13         With respect to Count Two, conspiracy to commit

14  securities fraud, under Title 18, U.S. Code, Section 371, the

15  government would need to prove three elements:

16         First, that there was an agreement among two or more

17  persons to commit fraud in connection with the purchase or sale

18  of securities;

19         Second, that the defendant knowingly and willfully

20  became a member of that agreement; and

21         Third, that at least one coconspirator committed at

22  least one overt act in furtherance of the conspiracy.

23         With respect to Counts Three and Five, the substantive

24  securities fraud counts, the government would, again, need to

25  prove three elements:

J6sWwadP

1          First, that in connection with the purchase or sale of

2     a security, the defendant did any one or more of the following:

3     (1) employed an device, scheme or artifice to defraud; (2) made

4     an untrue statement of material fact, omitted to state a

5     material fact which made what was said under the circumstances

6     misleading; (3) engaged in an act, practice or course of

7     business that operated, or would operate, as a fraud or deceit

8     upon a purchaser or seller.

9          The second element is that the defendant acted

10    willfully, knowingly and with the intent to defraud; and

11         Third, that the defendant or anyone he aided and

12    abetted knowingly used, or caused to be used, any means or

13    instruments of transportation or communications in interstate

14    commerce or used the mails in furtherance of the fraudulent

15    conduct.

16         With respect to Count Six, the wire fraud conspiracy,

17    the government would need to prove two elements:

18         First, that two or more persons entered into an

19    agreement to commit the substantive crime of wire fraud;

20         Second, that the defendant knew the illegal purpose of

21    the agreement and willfully became a member of the conspiracy.

22         And then finally, with respect to Counts Seven and

23    Nine, the substantive wire fraud counts, there are three

24    elements:

25         First, that there was a scheme or artifice to defraud

J6sWwadP

1    or to obtain money or property by materially false and

2    fraudulent pretenses, representations or promises;

3           Second, that the defendant knowingly and willfully

4    participated in the scheme with knowledge of its fraudulent

5    nature and with the specific intent to defraud; and

6           Finally, that in the execution of the scheme the

7    defendant used or caused the use of interstate or foreign

8    wires, such as telephone calls, emails or monetary wire

9    transfers.

10          With respect to the government's proof at trial, the

11   government's proof would include, among other things, emails

12   and other electronic messages showing that the defendant was

13   aware of and participated in misappropriation of investor funds

14   in APEF IV and other Abraaj funds and used those funds to repay

15   investors to meet regulatory requirements and for other

16   inappropriate purposes.

17          In addition, there would be emails and electronic

18   messages showing that the defendant was aware of and approved

19   false valuation figures relating to APEF IV and knowing that

20   those figures were going to be used to market the APEF VI fund

21   to investors.  There would be witness testimony regarding the

22   defendant's role at Abraaj, particularly in the valuation

23   process.

24          The government would also establish venue and

25   jurisdiction by showing that Abraaj has an office in Manhattan;

J6sWwadP

1    the defendant and his coconspirators sent email messages to and

2    from the district; and there were wire transfers of funds to

3    and from the district over the course of the conspiracy.

4              THE COURT:  All right.

5              Sir, can you tell me what it is you did that makes you

6    guilty of these charges.

7              MR. SHECHTMAN:  Judge, can I say one thing at the

8    outset?

9              THE COURT:  Sure.

10             MR. SHECHTMAN:  I've shared the allocution which

11   you're about to hear with the government.  It is much easier to

12   allocute sort of overall than it is count by count, so you will

13   hear an allocution that is sort of an overarching allocution.

14   It's my view -- I think the government shares the view -- that

15   it meets all the elements of all the different counts, but

16   obviously the Court will determine that.

17             THE COURT:  All right, sir.

18             THE DEFENDANT:  Yes, your Honor.

19             From 2006 to 2018, I worked at Abraaj Capital Ltd., a

20   private equity firm headquartered in Dubai.

21             THE COURT:  Can you just speak really slowly, sir,

22   please.

23             THE DEFENDANT:  I apologize.  I'm sorry.

24             A private --

25             Let me start over, sir.

J6sWwadP

1          THE COURT:  Really slowly.

2          THE DEFENDANT:  From 2006 to 2018, I worked at Abraaj

3   Capital Ltd., a private equity firm headquartered in Dubai that

4   invested in companies in emerging markets.  I was a managing

5   partner and had principal responsibility for overseeing

6   Abraaj's investments.  By 2014, Abraaj was experiencing serious

7   liquidity issues.  Our operating costs significantly exceeded

8   our revenues from management fees and other sources.  Cash

9   shortfalls were a monthly reality.

10          At the direction of Arif Naqvi --

11          THE COURT:  At the direction of?

12          THE DEFENDANT:  Arif Naqvi, A-R-I-F, last name

13   N-A-Q-V-I.

14          -- Abraaj's founder and CEO, numerous steps were taken

15   to close the gap, steps that disadvantaged our investors.  To

16   name only two, we held back on distributing money to which

17   investors were entitled and used those funds to keep Abraaj

18   afloat.  And we drew down funds from investors and used those

19   funds for working capital, telling investors that funds were

20   being used for their benefit.  Put simply, money was commingled

21   that should have been segregated, and investors were not told

22   the truth.

23          This was especially so with respect to Abraaj Private

24   Equity Fund IV, APEF IV, which was launched in 2008 and

25   included U.S.-based investors.

J6sWwadP

1          In 2016, Abraaj began raising money for a new fund.

2     Abraaj Private Equity Fund VI, APEF VI.  We raised

3     approximately $3 billion from entities and individuals,

4     including several U.S.-based investors.  We met with potential

5     investors in Manhattan and sent emails into the United States.

6     In raising those funds, potential investors were lied to about

7     Abraaj's financial health.  We painted a rosy picture of a

8     prosperous firm, when, in fact, the firm was experiencing the

9     severe liquidity issues I have described.  We also materially

10    overstated Abraaj's track record.  We led potential investors

11    to believe that SEVERAL of our prior investments were more

12    successful than they really were.  To that end, I approved

13    valuations that I knew were inflated, and at Arif Naqvi's

14    urging, I resisted attempts by others in the firm to mark down

15    these valuations.

16         At meetings with potential investors, I stood by

17    silently while Abraaj's track record was overstated and its

18    financial health falsely portrayed.  I was respected by

19    investors and potential investors, and by my presence, I lent

20    my credibility to statements that I knew were not true.

21         Judge, the indictment charges a criminal enterprise

22    and conspiracy counts.  There was no formal agreement among

23    Abraaj's leaders to commit illegal acts.  Some of us pushed

24    back at Arif Naqvi's misconduct.

25         THE COURT:  Some of us pushed back?  I'm sorry.

J6sWwadP

1          THE DEFENDANT:  At Arif Naqvi's misconduct.

2          Too often, however, we capitulated.  We knew that,

3    acting together, we were giving investors and potential

4    investors, people to whom we owed a duty of candor, a less than

5    candid account of the firm.

6          Judge, I knew at the time that I was participating in

7    conduct that was wrong.  When things turned bad in 2014, I

8    should have walked away.  I considered it but didn't.  My

9    commitment to Abraaj compromised the integrity of my judgment,

10   and I ended up drifting from who I really am.  For that, I am

11   ashamed.  I hoped that if I stayed I could help give investors

12   what they were promised and entitled to.  The hope was never

13   realized.  I share responsibility for what happened.  I regret

14   my involvement more deeply than anyone can imagine.

15         THE COURT:  OK.  Sir, just to clarify, you were

16   reading from a statement just now.  Is that correct?

17         THE DEFENDANT:  That's correct, sir.

18         THE COURT:  Is everything in that statement true?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Did it happen just the way you described

21   it?

22         THE DEFENDANT:  It did, sir.

23         THE COURT:  For the racketeering conspiracy, the acts

24   are the securities fraud counts.

25         MR. QUIGLEY:  Yes, your Honor.  The securities fraud

J6sWwadP

1   and the wire fraud counts are both predicate acts.  Both

2   securities fraud counts and both wire fraud counts, that's four

3   predicate acts.

4          THE COURT:  I just want to make sure we got enough

5   detail on those.

6          The government, I gather, is satisfied with the

7   allocution.

8          MR. QUIGLEY:  Yes, your Honor.  And we would proffer

9   that the shares of the private equity fund, the partnership

10  interests that were marketed to investors, are securities under

11  the securities laws.

12         THE COURT:  And this is the shares in APEF IV and APEF

13  VI?

14         MR. QUIGLEY:  APEF IV and APEF VI, yes, your Honor.

15         THE COURT:  There are just two areas I want to

16  clarify.  One is materiality of whatever the false statements

17  were, and the other is with conspiracy, since I'm told there

18  was no formal agreement, which is understandable.

19         Sir, you mentioned a number of times false statements

20  that were made to investors.  Do you know what I'm referring

21  to?  You talked about the liquidity, how much operating capital

22  you had, expenses and so forth.

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  OK.  I just want to clarify whether the

25  misstatements would have been important to the people who were

J6sWwadP

1  deciding whether to buy shares.  Were they important?

2          THE DEFENDANT:  The valuations were important, sir,

3  and the financial health of the company is also important, and

4  that would --

5          THE COURT:  Is also?

6          THE DEFENDANT:  Is also important.

7          THE COURT:  And you were an employee of this

8  organization, is that correct?

9          THE DEFENDANT:  Yes, sir.  I -- I resigned in December

10  '17 and left in March of '18.

11          THE COURT:  OK.  But during the time period --

12          THE DEFENDANT:  Yes.

13          THE COURT:  -- you were an employee of the Abraaj

14  group?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Were you working together with the people

17  who were making the false statements to the investors?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  All right.

20          Anything else the government wants me to ask?

21          MR. QUIGLEY:  No, your Honor.  We think the allocution

22  is sufficient.

23          THE COURT:  Mr. Shechtman, anything?

24          MR. SHECHTMAN:  No.  Same, your Honor.  I think the

25  allocution is sufficient.

J6sWwadP

1          THE COURT:  All right.  On the basis of the

2    defendant's responses to my questions and my observation of his

3    demeanor, I find he is fully competent to enter an informed

4    plea at this time.  I also conclude that he understands the

5    nature of the charges and the consequences of the plea.

6    Finally, I'm satisfied the plea is voluntary and that there's a

7    factual basis for it.  Accordingly, I recommend that the

8    proffered pleas to Counts One, Two, Three, Five, Six, Seven and

9    Nine of superseding indictment No. 6 be accepted.

10          I'll put a control date down.

11          MR. SHECHTMAN:  I think that makes good sense, Judge.

12          MR. QUIGLEY:  Yes, your Honor.  I think Judge Kaplan's

13    practice is six months, so we would ask for a date in about six

14    months.

15          THE COURT:  OK.  How about December 27?

16          MR. QUIGLEY:  Fine with the government, your Honor.

17          MR. SHECHTMAN:  Fine, your Honor.

18          THE COURT:  OK.  Anything else from the government?

19          MR. QUIGLEY:  No, your Honor.  Thank you.

20          THE COURT:  Defense counsel.

21          MR. SHECHTMAN:  Nothing else, your Honor.

22          THE COURT:  Thank you.

23          MR. SHECHTMAN:  We thank you.

24          (Adjourned)

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300